UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6168-CR-FERGUSON

UNITED STATES OF AMERICA )
)
v. )
)
ERIC SILVERMAN )

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT (PSI)**

The United States of America, by and through its undersigned counsel, hereby files this Opposition to Defendant's Objections To the PSI, and states as follows:

1. In June 2000, the defendant was charged in an eleven count indictment which also charged Mark Cohen, Bruce Hollander and others. On September 5, 2000, the defendant pled guilty to Counts I and II of the Indictment, which charged him in Count I with conspiring to commit bank fraud, in violation of 18 U.S.C. Section 371, and in Count II with bank fraud, in violation of 18 U.S.C. Section 1344.

2. In late 1996 Mark Cohen went into partnership with Eric Silverman. They would solicit unsophisticated, first time home buyers to purchase homes. They would show the buyers various homes. When the buyers were ready to purchase a home, Cohen and Silverman, through Silverman's company, American Redevelopment

1

Corporation (ARC), would enter into a contract to buy the house and then enter into a second contract to sell the house to the first-time home buyer for approximately $15,000 more than ARC purchased it.  The closing for both of the sales would take place on the same date.  These type of transactions are known as "flip" transactions, where an investor buys property and immediately "flips" or sells the property for an immediate profit.  Many lending institutions do not like to fund "flip" transactions.  In order to lawfully execute a "flip" transaction the lending institution must be apprized of both the purchase and the immediate resale.  Silverman, Cohen and their coconspirators would defraud the lending institutions by hiding the fact that these transactions were "flip" transactions.

   3.  A HUD insured loan for the purchase of a person's primary residence requires that a minimum cash investment be made by the borrower from his or her own funds of at least 3% of the purchase price to be used for closing costs and the down payment. HUD requires the minimum cash investment in order to ensure that the borrower has an actual financial stake in the property, and will be more likely to maintain the mortgage commitment and less likely to fall into default.  If the borrower did not have the funds personally, those funds could be provided to the borrower by certain persons and entities as a gift.  However, the seller was not permitted to provide the funds to the borrower.  In this case Silverman would unlawfully provide the funds to the buyer, and then

be reimbursed at closing from the proceeds of the sale.

4.   After the defendant pled guilty a PSI was prepared reflecting that the defendant's offense level was determined to be level 21 and the criminal history was a category I.  Thus, the defendant's sentencing guideline range is 37-46 months.  The offense level was computed as follows:

|  |  |
|---|---|
| Base level for offense under 2F1.1 | 6 |
| Plus: Fraud loss of $1,500,000 or greater | 12 |
| Plus: More than one victim/more than minimal planning | 2 |
| Plus: Organizer/leader | 4 |
| Less: Acceptance of responsibility | (3) |
| Total | 21 |

5.   The defendant has filed the following objections, which do effect the guideline calculation:

   A.   The defendant claims that he should not receive an upward adjustment as an organizer/leader, instead he should receive a downward departure for minor role;

   B.   The defendant claims that the fraud loss should be limited to the actual loss of $265,000; and

   C.   The defendant claims that he should not receive an adjustment for more than minimal planning/more than one victim.

3

## The Defendant Was An Organizer/Leader

6.      Section 3B1.1 of the Sentencing Guidelines states that a defendant who was an organizer or leader of a criminal activity involving five or more persons shall be enhanced four levels.  By all accounts the defendant and Mark Cohen were partners in this mortgage fraud scheme.  Cohen needed Silverman to finance the transactions.  Silverman would take the "gift donors" to the bank in order to obtain the fraudulent gift checks.  Silverman also handled the closings at the title companies.  Through his friendship with coconspirator Ken Duquette, Silverman got Ken Heyder and his staff to fraudulently prepare title commitments for him and Cohen in order that the lending institutions not find out about the "flip" transactions.  After Heyder no longer wanted to do closings for Cohen and Silverman the defendant obtained the services of Certified Title to do the closings.  Certified Title did a few closings and then Cohen and Silverman switched to co-defendant Hollander.  It was Silverman who originally knew Hollander and introduced Hollander to Cohen to handle Cohen's prior criminal matter. As partners Cohen and Silverman split the profits from each closing.  Both Cohen and Silverman should receive the four level enhancement for leader.

## The Loss Should Be More Then $800,000

7.      Application Note 8(b) to the Sentencing Guidelines (eff Nov. 1, 2000) states that in fraudulent loan application cases the

loss is the actual loss to the victim or the expected loss if the loss has not yet come about. However, where the intended loss is greater, then the intended loss is to be used. The loss need not be determined with precision. The court may make a reasonable estimate of the loss. See Application Note 9.

8.  In this case the PSI reflects that the loss is more than $1,500,000, but less than $2,500,000 for an upward adjustment of twelve points under the sentencing guidelines. The government has completed the attached list using both the actual and expected loss. In computing the loss the government did not include losses on properties that closed in 1999 when the defendant began cooperating with the government. The government has attached a list of the actual and expected losses on the properties totaling over $800,000. These properties include losses on properties which were already resold after foreclosure and an estimate of the losses on properties that are expected to go into foreclosure. Thus, the upward enhancement for the amount of loss should be eleven, not twelve points as reflected in the PSI.

### There Was More Than One Victim and the Offense Involved More Than Minimal Planning

9.  Section 2F1.1 of the Sentencing Guidelines provides for a two point enhancement were the offense involved either more than minimal planning or a scheme to defraud more than one victim. As

noted in the attached schedule of losses not only is HUD a victim of this scheme, but other conventional lenders were victims. Thus, as the defendant was involved in a scheme to defraud more than one victim the two point adjustment is applicable. Further, the scheme involved more than minimal planning. Section 1B1.1 of the Sentencing Guidelines states that more than minimal planning is present in any case were there are repeated acts over a period of time, unless it was clear each act was opportune. In this case the defendant was involved in committing fraudulent acts with respect to approximately 100 loans. These acts were not opportune. Thus, the adjustment applies.

**CONCLUSION**

For the foregoing reasons each of the defendant's objections to the PSI, accept as to the amount of the loss, must be denied. The defendant's guideline range should be adjusted to 33-41 months.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____

JEFFREY N. KAPLAN
Assistant United States Attorney
FLA BAR No. A005500030
500 E. Broward Blvd., Suite 700
Fort Lauderdale, Florida 33394
Tel: (954) 356-7255x3515
Fax: (954) 356-7336

6

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was delivered by United States mail, this 21st day of June, 2002, to: Ted Crespi, Esq., 1776 Pine Island Road, Suite 218, Plantation, Florida 33322.

_____
JEFFREY N. KAPLAN
Assistant United States Attorney

ERIC SILVERMAN
LOSS CALCULATION

HUD Loans foreclosed, acquired by HUD, and resold:

| | |
|---|---|
| David Lee | $46,547 |
| Christopher Wilson | $32,175 |
| Natalene Knight | $36,628 |
| Eddy Jerome | $21,547 |
| Sandra Matos | $17,096 |
| Mosenique Pierre | $18,806 |
| Angelique Charlmont | $20,353 |
| Harry Antoine | $32,129 |
| Luders Thomas | $66,360 |
| Rochel Francois | $109,706 |
| Eric Silverman | $38,278 |
| Steven Garcia | $35,841 |
| Anibal Georges | $28,861 |
| Michelle Jackson | $21,109 |
| David Pinckney | $38,066 |
| Victor Rivera | $52,726 |
| **Total HUD Actual Loss** | **$616,228** |

Conventional loans foreclosed, acquired by lender, and resold:

| | |
|---|---|
| Nitza Garrepy | $25,900 |
| Jacqueline Joseph | $ 3,500 |
| Viven Shaw | $     0 |
| **Total** | **$29,400** |

HUD loans foreclosed, Acquired by HUD, Awaiting resale:

| | |
|---|---|
| Joel Devalon | $38,514* |
| Kenneth Gray | $38,514* |
| Jimmy Leandre | $38,514* |
| **Total** | **$115,542** |

HUD loans with lis pendens from lender:

| | |
|---|---|
| Jean Alabre | $38,514* |
| Jacqueline Townsend | $38,514* |
| **Total** | **$77,028** |

**Total**            **$838,198**

*HUD Average Loss ($616,228 divided by 16 properties = $38,514